## THE TORRINGTON ELECTRIC LIGHT COMPANY *vs.* EDWARD H. STEDMAN ET UX.

First Judicial District, Hartford, October Term, 1923.

WHEELER, C. J., BEACH, CURTIS, BURPEE and KEELER, Js.

In a suit to restrain the defendants from the continuance or repetition of acts of trespass upon land owned and in possession of the plaintiff, it appeared that the properties of the respective parties adjoined each other, the plaintiff's land being west of the land of the defendants, and the main issue was as to the location of the boundary line between them.   Judgment was rendered for the plaintiff and the defendants appealed.   *Held:*—

1. That the finding which fixed the defendants' frontage on the street at 110.3 feet was correct according to the record title, and that there was no basis for any claim by the defendants to land west of this point, upon which the acts of trespass admittedly occurred.
2. That the finding with respect to the plaintiff's record frontage was not so clear, and must be corrected; but that such correction did not require a change in the judgment, since that covered the lesser frontage, within which the acts of trespass were committed, as well as the greater frontage claimed by the plaintiff.
3. That the testimony of the town clerk with respect to the contents of a lost map, was not adequate to sustain the finding that the plaintiff was the sole owner and possessor in fee simple of the entire tract of land which it claimed to own, and that such paragraph must therefore be stricken out; but that this correction and others which were requested could not, if made, alter the conclusions arrived at by the trial court.
4. That the objections to the admission of the testimony of the town clerk with respect to the contents of the lost map, were not well taken; and furthermore, the rulings thereon were harmless, since such evidence tended to prove only one feature of the controversy, the location of a tract of land abutting the street, a fact which was not in reality in controversy.

Evidence of acts offered, not to show title, but a possession consistent with ownership, is admissible for that purpose.

Argued October 2d, 1923—decided January 8th, 1924.

SUIT for an injunction to restrain the continuance or repetition of acts of trespass upon land alleged to be owned by the plaintiff, and for the removal there-

from of a building erected thereon by the defendants, brought to and tried by the Court of Common Pleas in Litchfield County, *Woodruff, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendants. *No error.*

*Walter Holcomb,* for the appellants (defendants).

*Samuel A. Herman,* for the appellee (plaintiff).

WHEELER, C. J. The assignments of error are based upon corrections of the finding, rulings on evidence, and the finding of the issues for and rendering judgment for the plaintiff.

There is no controversy as to the acts of the defendants of which the plaintiff complains. Whether these acts were trespasses or not, depends upon whether the plaintiff was entitled at the time of the acts to the possession of the land and penstock upon which the acts occurred. The plaintiff claims title and possession of the land upon which certain of the acts of alleged trespass occurred, and of the right to have its penstock upon defendants' land undisturbed, and to go upon the defendants' land and repair the penstock when necessary. The defendants claim title and possession of the same land and claim that the penstock is located farther west than the plaintiff claims it to be.

We take up, first, the corrections claimed in the defendants' title as stated in paragraphs 22 and 23 of the finding, that the defendants' total frontage of land on East Main Street, Torrington, is 110.3 feet, and that this land bounds plaintiff's land on its western boundary. In the earlier deeds in this chain of title the highway now known as East Main Street is designated as the Turnpike or Torrington Turnpike. Defendants' chain of title to their land fronting on East Main Street

runs in part through the deed from Dennis Porter to Charles Church, which describes the land therein conveyed by accurate surveyor's measurements, and gives the north boundary upon the Turnpike as five rods and five links, or 85.8 feet. It also establishes the eastern boundary of the land conveyed by locating its beginning 2 rods and 22 links, or 47.5 feet from the dwelling of John Church, which is the present house of the defendants, so that there is no doubt as to the location of this tract of land. The balance of defendants' frontage on East Main Street is described in the deed in the defendants' chain of title from the Alvord Carriage Manufacturing Company to Logan. This description begins at the northwest corner of the above mentioned tract having a frontage of 85.8 feet on the Turnpike or East Main Street, and runs thence west $24\frac{1}{2}$ feet on the Torrington Turnpike or East Main Street. The total frontage on East Main Street from the deeds in defendants' chain of title is thus 110.3 feet, as the court has found. The acts of trespass complained of admittedly occurred on land west of these two tracts. We are unable to see from the record title any basis for any claim of title by the defendants to land west of these two tracts.

The trial court's finding that the plaintiff has title to a frontage of 61 feet on East Main Street in a tract adjoining the land of the defendants, is not clear as to the entire frontage. The plaintiff has been more successful in attacking the defendants' title than it has in supporting its own title to the whole of this frontage. The plaintiff's chain of title passes through the warranty deed of Eunice Taylor to Charles B. Smith, and from Smith to the Alvord Carriage Manufacturing Company. The frontage upon the Turnpike thus conveyed is given as 90 links, or 59.4 feet. The east boundary begins near the house of George W. Church,

which is the house of the present defendants. George W. Church is in the defendants' chain of title, Charles S. Church having conveyed the 85.8 feet tract, which he obtained from Porter, to George W. Church, who in turn conveyed this tract to Logan. The Alvord Carriage Manufacturing Company conveyed 24½ feet of the 59.4 which it obtained from Smith to Logan, and thence, as we have seen, by various conveyances it came to the defendants. The beginning point in the description in the deed was the northwest corner of Logan's tract of 85.8 feet on East Main Street, and its east boundary is along this tract. The balance of the 59.4 feet frontage tract remaining in the Alvord Company was 34.9 feet. And this was all the frontage on East Main Street which the record discloses that the plaintiff, the Torrington Electric Light Company, got upon succeeding, through intervening transfers, to the title to the tract remaining in the Alvord Company. From the Alvord Company this tract went through various conveyances to Nelson W. and Oliver P. Coe, who made division by conveyances of properties purchased from the Redfield and Rice Company, including this 34.9 feet frontage. Oliver Coe, who succeeded to the title to this 34.9 feet frontage tract, conveyed to the Torrington Ice Company 18 feet on East Main Street adjoining Henrietta M. Treat. If this 18 feet came from the 34.9, it would leave 16.9 feet as the total frontage subsequently acquired by the plaintiff. Even so, the acts complained of upon this tract would have justified the judgment of injunction rendered. Neither the complaint nor the judgment recite any definite measurements for the bounds of this tract; their general terms describe the tract with a frontage of 16.9 as well as one with frontage of 61 feet. In the defendants' chain of title in two deeds, that of Alvord Company to Logan and that of Redfield and Rice to Sperry, a

fence is recognized as existing upon the western boundary of defendants' tract. Witnesses certify as to the existence of a fence for many years and of the existence of the posts of the fence up to the trial. The line of this fence corresponded with the west boundary of defendants' 110.3 feet frontage tract. Since the plaintiff's land unquestionably adjoined the defendants', it is clear that the acts of trespass complained of occurred on plaintiff's land. The trespass to the plaintiff's penstock has been very clearly established. That there is 61 feet between the 18 feet frontage tract of the Torrington Ice Company and the defendants' land, is undoubted. Upon the evidence submitted, we cannot find that the plaintiff has definitely proven a record title to more than the 16.9 feet frontage. The probability is that the plaintiff owns the balance of this 61 feet frontage, but its record title is not clear, although the evidence would have justified a claim of a title by adverse possession for the period of 14 years prior to this action to this balance of the 61 feet frontage. Paragraphs 4 and 5 are corrected so as to refer to a tract as described in paragraph 3, of a frontage of 16.9 feet instead of one of 61 feet. These corrections in the finding do not require a change in the judgment; its terms, as we have stated, are so general that it may cover the tract of 16.9 feet frontage as well as that of 61 feet.

The court also found, from the testimony of the town clerk, that a map made by John Whitlock, civil engineer, was filed in the town clerk's office in 1872 or 1873 by the trustee of the Redfield and Rice Manufacturing Company as owner of the 59.4 feet frontage tract in plaintiff's chain of title, and that the map indicated upon it the property line between the tract of land claimed by the plaintiff and the land of the defendants. The contents of this map were important, since several of the conveyances included in plaintiff's

chain of title, including the deed to plaintiff, referred to this map as descriptive of the land conveyed. This finding should be corrected by being stricken out. The testimony of the town clerk did not indicate this. Instead of inquiring of him for the reproduction of the map, counsel for plaintiff asked him whether the map showed any land abutting on East Main Street, and he replied that it did. He was then asked: "And where on what is now known as East Main Street did this land abut on that side of East Main Street?" He replied: "Land ran on the south side of East Main Street from the Steadman corner west to the land of H. S. Treat. I mean from the fence line of the Steadman property west to the land of Henrietta M. Treat." Later, the witness said: "That Whitlock map showed nothing of the names of adjoining properties but it didn't give any of the property of the adjoining proprietors." It is thus apparent that the witness, in giving the names of adjoining proprietors, was giving, not his recollection of the map, but his knowledge independent of the map. Whether there were any figures or measurements on the map the witness didn't know. So that his testimony as to the contents of the map enabled the court to find but one fact, viz., that the map represented property fronting on East Main Street. Under these circumstances the finding of the court in paragraph 4 was found upon a misconception of the testimony and must be stricken out.

In view of these conclusions, it is unnecessary to review the other claimed corrections of the finding. None of these, if made, could change the conclusions arrived at.

The rulings on evidence may be disposed of briefly. The evidence of acts of ownership and possession were not offered to show title, but to show a possession consistent with ownership, and hence was admissible. *Merwin* v. *Morris*, 71 Conn. 555, 573, 42 Atl. 855.

The evidence of the town clerk as to the contents of the map, to which we have already referred, was objected to because not the best evidence, because the witness was not competent to re-establish the map, and because parol evidence could not be admitted to vary the description contained in Exhibit A, which showed the land owned by Nelson W. and Oliver P. Coe. The loss of the map had been established, and its contents were clearly admissible. None of the objections made was well taken. No objection was taken to the form of the questions, nor to their competency upon ground other than stated. In addition, the rulings were harmless, because the evidence did not tend to prove the contents of the map except as to a single feature, that the land it delineated of the then owner in plaintiff's chain of title bordered on East Main Street, a fact which was not in reality in controversy.

There is no error.

In this opinion the other judges concurred.